VAIMAONA FOLOI, ARIETA VAIMAONA, LAGIMA
VAIMAONA, and TAU FUIAVA, Appellants

v.

FA'AMAMAFA TUITASI, Appellee

High Court of American Samoa
Appellate Division

AP No. 24-89

March 12, 1991

Before FONG*, Acting Associate Justice, KLEINFELD**, Acting Associate Justice, TOGAFAU***, Acting Associate Justice, TUIAFONO, Associate Judge, SIAKI, Associate Judge.

Counsel: For Appellants, Togiola T. A. Tulafono
For Appellee, Charles V. Ala'ilima

The senior matai and other members of the Vaimaona family appeal a decision which dismissed a challenge to registration of land to Fa'amamafa Tuitasi.

The trial court's findings of fact, except as to notice, are not at issue in this appeal. In December of 1977 Vaimaona Foloi, the senior matai of the Vaimaona family of the village of Lauli'i, executed a warranty deed to a portion of the land known as Mulipa, to Fa'amamafa Tuitasi, a member of the Vaimaona family. Tuitasi tried to register the tract as her individual land. Arieta Vaimaona complained to various government officials. The title was not registered, and the original copy of the warranty deed was destroyed or lost.

Ten years later, in September of 1987, Vaimaona Foloi appeared personally before the Land Commission, seeking its approval of his conveyance to Tuitasi. Members of the commission asked him if he had consulted with his family about the transaction. He replied that he had not. Commission members then recommended that he not alienate the land without consulting with his family and suggested a separation agreement rather than a conveyance. Vaimaona Foloi subsequently returned and reiterated his request. At this second appearance, the Commission approved, and the Governor signed his approval a few days later.

Tuitasi had, prior to these approvals, filed a photocopy of the deed with the Territorial Registrar. The Registrar treated the filing as a request for Land Commission approval and also as a request for

* Honorable Harold M. Fong, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

** Honorable Andrew J. Kleinfeld, District Judge, United States District Court for the District of Alaska, serving by designation of the Secretary of the Interior.

*** Honorable Maleatasi Togafau, District Judge, High Court of American Samoa, serving by designation of the Secretary of the Interior.

registration. After the notice period had elapsed, which was after the approvals by the Land Commission and the Governor, the Registrar issued a certificate of registration, certifying that the "Warranty Deed, Portion of Land 'Mulipa' in the Village of Lauli'i [had been offered for registration by Mrs. Tuitasi] as her individually-owned land [and had been] duly registered."

The Vaimaona family filed a complaint the following year, when Tuitasi built a wall on the land. They alleged fraud in the factum, that is, that Tuitasi obtained Vaimaona's signature by deceiving him into thinking he was signing something other than a deed, and prayed for a decree setting aside the registration. The trial court dismissed the claims, finding no fraud in the factum, and denied a motion for new trial based on alleged inadequacies in notice. We affirm on the issue of fraud and remand for additional findings of fact regarding notice.

At trial, the focus of the proceedings was on the issue of fraud, not notice. The trial judge found that there was no fraud in the factum, because the proceedings before the Land Commission plainly demonstrated that Vaimaona understood that the document was a conveyance to Tuitasi. The trial court found that the forcefulness of Tuitasi's personality did not nullify the otherwise lawful actions of the sa'o, the land commission, the governor, and the territorial registrar. These findings are not challenged on appeal and are plainly not "clearly erroneous." A.S.C.A. § 43.0801(b).

### I. Family Consultation and Approval

The central issue on appeal is whether a matai can convey communal lands without family approval. Both sides agree, and the trial court found, that "the members of the family . . . should, in accordance with Samoan custom, have been consulted before any family land was alienated," and that the sa'o did not comply with this custom. They disagree on whether this requires or permits the court to set aside a conveyance.

Vaimaona correctly notes the constitutional command that the policy of all branches of the government must be "to protect persons of Samoan ancestry against alienation of their lands and the destruction of the Samoan way of life." Rev. Const. Am. Samoa, Art. I §3. He also correctly notes the statutory requirement as to the role of custom, which is among the many statutory provisions implementing the constitutional requirement:

90

> The customs of the Samoan people not in conflict with
> the laws of American Samoa or the laws of the United
> States concerning American Samoa shall be preserved.

A.S.C.A. § 1.0202. Appellant is also correct in noting this court's characterization of Samoan custom regarding the matai system and communal tenure:

> The twin cornerstones of the Samoan way life
> are communal tenure and the matai system. Each is
> essential to the other. Without the matai system to
> administer it, the communal land system becomes
> anarchy. Without the communal land system, there is
> no reason for a matai.

> In American Samoa, the family owns the land.
> A matai, selected by, and subject to removal by the
> family, allots the land to family members who pay a
> type of compensation comparable to rent in the way of
> service to the matai-actually, to the family. In return
> the matai undertakes the protection and well-being of
> family members. Such is the basic Samoan custom and
> tradition.

*Tavai v. Silao*, 2 A.S.R.2d 1, 2 (1983).

Appellant errs, though, in arguing that because custom requires family consultation before the sa'o conveys communal land, courts must implement that custom. The argument falters because of the statutory phrase, "not in conflict with the laws of American Samoa." The statute provides for judicial preservation of customs "not in conflict" but not for those customs which are "in conflict." This provision authorizes the Fono, not the High Court, to set aside custom by statutes to the contrary.

In this case, the Fono has provided by law for conveyances without an absolute requirement of family consultation, so the custom upon which appellants rely is "in conflict." A serious policy argument can be made for revision of the statutes to require family consultation, or family consultation and approval. *See* Judge Vaivao's concurrence in the trial court. Such an argument, though, as Judge Vaivao's opinion explains, must be addressed to the Fono; our role is limited to applying the law which the Fono has made.

The Fono has codified the system for alienation of land, at chapter 2 of title 37, in sufficiently comprehensive form so that the courts cannot add an additional substantive requirement such as the one urged by appellants. Under the statutory scheme, a matai generally cannot alienate communal family lands (1) without the written approval of the governor and (2) to any person of less than one-half native blood. A.S.C.A. § 37.0204(a)(b).

Nor does the statute allow a written approval by the governor without an additional hurdle. An instrument accomplishing such a conveyance must be filed with the secretary of the land commission "for study and recommendations thereon by the commission" before becoming effective. A.S.C.A. § 37.0203(a). In performing its duty of study and recommendation, the commission must "endeavor to prevent . . . improvident alienations of communal lands by those charged with the management and control thereof." A.S.C.A. § 37.0203(c).

By providing that a conveyance requires these three things, the Fono has excluded the possibility of a fourth so substantial and significant as family consultation and approval. Had the Fono meant to impose this as a fourth requirement, it would have said so.

Under this statutory scheme, instead of the High Court applying a rule requiring family consultation and approval, the land commission applies a more general purpose of preventing "improvident alienation." This standard may, in the discretion of the commission, embrace failure by the matai to consult with his family, but the commission is not required by law to withhold approval for failure to consult, where it has not found the conveyance to be "improvident." That word is usually defined to mean lacking in foresight, not providing for the future, thriftless, or rash. American Heritage Dictionary (2d College ed.); Websters New International Dictionary (2d ed. unabridged). Vaimaona had stuck to his expressed intention to convey communal land to Tuitasi for ten years and stuck to it through two hearings of the commission. The Fono structured the commission as an appropriate body to exercise discretion; it consists of a chairman experienced in real estate transactions appointed by the Governor, the territorial registrar, and the three district governors, A.S.C.A. § 37.0202, so is certainly an appropriate repository of broad discretion. In this case, the Commission carried out its duty by asking Vaimaona if he had consulted with his family, recommending against alienation without such consultation, and rejecting his first attempt to alienate the land without seeking family approval. The statute says, regarding the Land Commission's duty, "endeavor to prevent" and not

merely "prevent." Addition of the words "endeavor to" limit the word "prevent," making it less absolute. The commission endeavored to induce Vaimaona to comply with custom.

Vaimaona has not argued, before the trial court or this court, that the Commission failed to discharge its duty. Our discussion of its duty may therefore be dicta. We comment upon the commission's duty because the commission's and the Governor's discretion to disapprove are as far as the Fono has enabled public authorities to go in preventing a matai from conveying to a native Samoan without appropriate consultation with and approval from his family.

Vaimaona argues that *Sione v. Tiualii*, 3 A.S.R. 66 (1953) (Trial Division), requires a contrary conclusion. The case does indeed contain language contrary to the result we reach. The language may be dictum, because the basis for the decision appears to be adverse possession. In any event, the alienation statutes were comprehensively recodified in 1962, so the *Sione* decision, issued before the 1962 statutory revisions, lacks compelling force.

## II. Notice

This issue appears to have been something of an afterthought in the case, but we think it is important. It was not fully developed by the litigants at trial, which focused upon the issue of family consultation and approval, so the trial record is sketchy, and the issue seems to have been developed mainly on a motion for new trial. We conclude that additional fact-finding is needed.

American Samoa has a subtle and complex system for developing and preserving public records of land ownership. The Samoan system blends a Torrens registration system, a recording system, and special Samoan provisions to protect communal ownership and the Samoan way of life.

Most American jurisdictions rely on a recording system. In such a system, many kinds of instruments affecting title to land may be recorded. The government record does not certify ownership. Instead, proof that an instrument was recorded establishes only that persons subsequently acquiring interests in the land had notice of the public record and provides evidence of the terms of the documents filed. In case of title disputes, quiet-title suits in the nature of ejectment are used to determine who owns what interests. A purchaser of land may hire a

title company or attorney to search the public records and render an opinion, perhaps backed by insurance, regarding the title. Because of the difficulty of searching each chain of title through grantor and grantee indices back to the initial government patent or other first acquisition, specialized attorneys and title companies develop "title plants," maintained by parcel, so that old chains of title need only be updated for new conveyances.

Sir Robert Torrens developed an alternative to the recording system, called a registration system, based on the system prevalent for registering title to merchant ships. The Torrens system of land registration, first implemented in South Australia, is prevalent in the British Commonwealth. This kind of registration system is also now typically used for motor vehicles and airplanes in American jurisdictions.

In a Torrens registration system, an owner of land registers the land, and obtains a certificate of registration. The certificate establishes title, so a buyer can rely on it, and does not have to obtain evidence of the owner's chain of title. The registration certificate is not merely notice that someone filed an instrument, as a certified copy of a recorded instrument would be in a recording system, but is instead government certification that the registered owner does indeed own what the certificate says he owns. The certificates are subject to being set aside only in very limited circumstances. Because the certificate wipes out alternative claims to interests in the land, Torrens systems generally require surveys to establish the boundaries of the land, and notice, to assure that competing claimants will have an opportunity to dispute issuance of the certificate. The certificate has the same function as a decree in a quiet title suit, so "meticulous attention to the proper manner for service of process" is "absolutely essential to assure certainty to persons who wish to rely on the conclusiveness of the certificate." 6A R. Powell, The Law of Real Property ¶ 908[3][a], at 83-8 (Rohan ed. 1991). *See generally* 66 Am. Jur.2d, Registration of Land Titles; W. Burby, Real Property 332-34 (3d ed. 1965); J. Cribbet, W. Fritz, C. Johnson, Cases and Materials on Property 855-64 (2d ed. 1966).

As the system is implemented in American Samoa, a registration system exists alongside a recording system. The registration system is established in chapter 1 of title 37. A recording system appears to have evolved under chapter 2 of title 37.

The registration system is a fairly traditional Torrens system. An owner of unregistered land may register his title with or without the

precipitating event of a conveyance. A.S.C.A. § 37.0101(a). No title can be registered unless the Registrar "is satisfied that there is no conflicting claim thereto." A.S.C.A. § 37.0101(b). The central device for determining whether there are conflicting claims is the notice provision. Notice of a proposed registration must be posted for 60 days on the bulletin board at the courthouse in Fagatogo "and at 2 public places in the village in which or nearest to which the land is located." A.S.C.A. § 37.0103(a). During the 60-day notice period, anyone claiming an interest in the land adverse to the applicant's claimed interest may file notice of his claim with the Territorial Registrar, but if no such notice is filed and the other statutory requirements are complied with, the Territorial Registrar is required to register the title to the land in the name of the applicant. A.S.C.A. § 37.0103(b),(c). If adverse claims are filed, then the Territorial Registrar refers the matter to the High Court of American Samoa for adjudication. A.S.C.A. § 37.0104(a).

The trial court correctly noted the problems in the evidence regarding notice of proposed registration of title. Notice has to be posted of a proposed registration "for 60 days on the bulletin board at the courthouse in Fagatogo and at 2 public places in the village in which or nearest to which the land is located." A.S.C.A. § 37.0103(a). In this case, the affidavit of posting may be insufficient evidence that the statutory posting requirement was met. It alleges posting from August 6 to September 8, which is only about 33 days, not 60. The affidavit says that it was subscribed August 6, before the posting took place, so it was evidently prepared without personal knowledge of whether the notices really were posted through September 8. It does not show a signature of the person qualified to take oaths, so it may not be under oath. It says that the notice was posted in the village of Lauli'i, and the certificate of registration says that the land is in Lauli'i; but the deed says that the land is in the village of Aumi, and so does the survey.

This is not to say that the posting was inadequate. It may be that the posting satisfied A.S.C.A. § 37.0103(c), but that the affidavit does not fully set forth the notice which was given. Testimony might fill in the gaps. Nevertheless, an evidentiary hearing and findings of fact are needed on the question. Vaimaona's actual knowledge of the proposed conveyance does not vitiate the importance of notice, because other interested persons might have had some objection to registration of title in Tuitasi's name. On the record before us, the evidence of procedural irregularity in the notice of proposed registration is sufficiently compelling to overcome the strong presumption of the validity of certificates of registration and put the matter at issue.

95

Notice is an especially salient issue in this case, because the substantive dispute was about whether Vaimaona consulted with and obtained consent from his family. Though we have agreed with the trial court that the statutes do not make that a necessary condition of a valid conveyance by a matai of communal land, nevertheless a matai seeking to convey against what he knew to be the preferences of part of his family might have an interest in slipping the conveyance past them so that they would not find out about it. Details like posting in a non-obvious place or in an adjacent village, posting for too short a period, incorrect statements of posting, not including the oath which would subject the maker to penalties of perjury, or even illegible photocopies in the places of posting, could be used to prevent the members of the family who disapproved of the conveyance from finding out about it in time to object to the registrar or, if the deed was not yet approved, to the land commission or the governor.

The recording system seems to have evolved under a statute in chapter 2 limiting the effectiveness of unrecorded conveyances. Under A.S.C.A. § 37.0210, a deed cannot "pass the title to any land or any interest therein . . . until such instrument has been duly registered with the Territorial Registrar."

> (a) No instrument shall be effectual to pass the title to any land or any interest therein, or to render such land liable as security for the payment of any debt or obligation until such instrument has been duly registered with the territorial registrar.

> (b) Due registration of an instrument relating to land or an interest therein shall be notice of the contents of such instrument to all persons thereafter dealing with such land or interest therein.

A.S.C.A. § 37.0210.

This chapter 2 provision provides for registering the instrument, as compared with the chapter 1 provision for registering the title. Though registration of the instrument is a necessary condition of the effectiveness of the instrument to pass title, it may not in all cases be sufficient. Registration of the instrument gives notice to people dealing with the land "thereafter" but does not necessarily affect the interests of persons who dealt with the land before. Unlike the chapter 1 registration of title provision, the chapter 2 registration of instruments provision

contains no requirement of notice prior to registration of the instrument. This is consistent with most recording statutes, because the instrument generally cannot affect preexisting interests of those not signatories to or otherwise bound by the instrument itself.

Even assuming that Tuitasi duly recorded Vaimaona's deed, this recording provision in chapter 2 does not entitle Tuitasi to prevail. The judgment below leaves her with a certificate of title, not just a recorded deed. The Vaimaona family sued to have the certificate set aside. The trial court noted probable defects in notice but did not set it aside. The practical effect of the trial court decision is to quiet title in Tuitasi. But Tuitasi did not sue to quiet title and has not proved an entitlement to have title quieted in her. All she proved was that the Vaimaona and members of his family were not entitled to have the title vacated because of lack of family consultation and approval. There may be other defects in Tuitasi's title, perhaps capable of assertion by other interested persons not plaintiffs in this lawsuit. It may be that the appropriate relief, as determined after an evidentiary hearing and findings on notice, would be to set aside the registration certificate but otherwise leave the parties as they are or to determine that the registration certificate was properly issued and that notice was adequate even though not adequately proved in the first trial. We cannot say on the present record which is correct.

Another reason not to quiet title in Tuitasi is that she may not have a duly registered deed. The words in A.S.C.A. § 37.0210(a) limit effectiveness of deeds to those which are "duly registered":

> No instrument shall be effectual to pass the title to any land or any interest therein, or to render such land liable as security for the payment of any debt or obligation *until such instrument has been duly registered* with the Territorial Registrar.

A.S.C.A. § 37.0210 (emphasis added). As the trial court noted, this case was a bit unusual in that the Registrar did not testify. The record does not show whether Tuitasi "duly registered" the instrument. The trial court found that the registrar treated her filing as being for registration of title and approval of the conveyance by the land commission. The deed must have been "duly" registered to convey Vaimaona's interest to Tuitasi. When it was presented to the registrar, the instrument was apparently a photocopy of a ten-year-old deed, which had not been approved by the governor. Was the deed presented to the registrar for chapter 2 registration of the instrument, and not only for

97

chapter 1 registration of the title? Was such an instrument recordable? Was it presented for recording? If the answer to any of these questions turns out to be "no" after evidence is taken, then the instrument may turn out not to have been "effectual to pass the title" under A.S.C.A. § 37.0210(a). *Cf.* 66 Am. Jur.2d, Records and Recording Laws §§ 124, 127, 128, 134, 138. If Tuitasi does not prevail on her registration certificate, then findings of fact on whether the deed was "duly registered" will be necessary.

AFFIRMED IN PART, REMANDED IN PART.